IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JOSHUA LYNN BAGWELL | § | |
| vs. | § | NO.  7:01-CV-032-R |
| COCKRELL, TDCJ-ID, JOHNSON et al. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

On the 13th day of April, 2006, the Court took under consideration Respondent's Motion to Dismiss following the mandate from the Fifth Circuit Court of Appeals and the District Court's Order of Reference of March 6, 2006.  Respondent and Petitioner appeared by and through their respective attorneys of record, and the Court proceeded to take evidence and testimony.  Having heard and considered Respondent's Motion, the various Replies, Responses and Briefs of the parties, the evidence and testimony admitted at the hearing, and the arguments of counsel, I find as follows:

1. On or about February 17, 1998 Petitioner, Joshua Luke Bagwell (hereinafter "Bagwell"), received a life sentence in a capital murder conviction and a ninety-nine year sentence on a conspiracy count.  His conviction was affirmed on direct appeal and his state court petition for discretionary review was refused.  Bagwell filed one state application for habeas corpus relief without success.  On February 23, 2001 Bagwell filed his petition for writ of habeas corpus. Following numerous extensions of time, four months later, on June 25, 2001 the respondent filed its answer. On June 29, 2001 the Petitioner filed a response.  Three volumes of state court records were delivered to court chambers on September 4, 2001.  Eleven months after his Petition was filed, on January 28, 2002 Bagwell, together with three other prisoners, escaped from the Montague County Jail.  He had been transported there from a Texas Department of Corrections prison to give testimony against one of the other defendants in the murder case arising from the 1996 shotgun slaying of Heather Rose Rich, a sixteen year old Waurika, Oklahoma, cheerleader.

2. Four days later, on February 2, 2002, while Bagwell was at large, the respondent filed its Motion to Dismiss  Petitioner's Petition for Writ of Habeas Corpus on the grounds that he was a

fugitive from justice. During the early morning hours of February 8, 2002, Bagwell, with one of the other escapees, surrendered, walking out of the convenience store south of Ardmore, Oklahoma, where they had held the store owner, George West (80 years plus) as a hostage. On February 11, 2002, Bagwell filed his Supplemental Response to the Respondent's Motion to Dismiss, asserting that the recapture ended the possible application of the fugitive disentitlement doctrine. But on September 20, 2002, seven months after the escape, the District Court entered an order of dismissal.

3. Through the witness, Craig Overby, an FBI agent who was called into investigation of the escape, Respondent established that the investigation of the escape and ultimate apprehension of the escapees involved over eight law enforcement agencies from Oklahoma, Texas and the Federal Bureau of Investigation. Over 300 officers of various ranks at the various agencies employed their investigative forces and resources toward locating and ultimately apprehending the escapees. Through Agent Overby, Respondent established that Bagwell was not a reluctant participant in the escape after the escapees left the confines of their cells. Respondent established through three business records affidavits that the Texas Department of Public Safety, Texas Department of Criminal Justice, and the Oklahoma State Bureau of Investigation had jointly expended over $73,000.00 in salaries, travel and operating expenses to apprehend the fugitives, including Bagwell. Through Agent Overby, Petitioner established that Bagwell surrendered peaceably, that no violence was committed, no gunfire was experienced, and that there were no personal injuries incident to the surrender. By copy of the Judgment and Sentence of Twana Cherese Smith, the mother of one of the escapees, Respondent established that she carried into the Montague County Jail certain hacksaw blades with an intention to facilitate the subsequent escape of Joshua Luke Bagwell and Curtis Allen Gambill, even after they had been re-arrested following the initial escape.

4. Respondent established that four years and two and one-half months have elapsed since the date of Bagwell's escape.

5. From the Transcript of the sentencing stage of the trial of Chrystal Gail Soto, one of the alleged murder participants and escapees, the Respondent established that Bagwell was a willing participant in the jail escape, neither being coerced nor intimidated in the escape.

6. Eleven months elapsed from the date of the filing of Petitioner's Petition for Writ of Habeas Corpus until the time of his escape.

7.  Petitioner's escape had a duration of ten days.

8.  Seven months elapsed from the time of Petitioner's recapture until the dismissal of his Petition for Habeas Corpus.

9.  I find no evidence that Bagwell's escape impeded the administration of justice, consideration of his habeas corpus petition, or in any way impacted the Court's efficiency.

## DISCUSSION

The Fifth Circuit decision expressly mandated that upon remand this Court consider the "application of the fugitive disentitlement doctrine in the light of the doctrine's historical justifications and unique facts of this case." Furthermore, the Court stated that on remand, this Court should "evaluate whether Bagwell's escape significantly interfered with the Court's consideration of his claims and whether the government demonstrated sufficient prejudice as a result of his absence."

Considering first the five historical underlying justifications for the fugitive disentitlement doctrine, they may be articulated as follows:

> (a)  If a defendant is a fugitive when the Court considers his case, it may be impossible for the Court to enforce any judgment rendered;
>
> (b)  Courts have advanced a waiver or abandonment theory which holds that by fleeing custody, defendant has waived or abandoned his right to an appeal;
>
> (c)  allowing a court to dismiss a fugitive's case acts as a <u>deterrent</u> to felony escape and encourages voluntary surrenders;
>
> (d)  because a litigant's escape impedes the ability of the court to adjudicate the proceedings before it, dismissal of the case furthers the court's interest in the efficient handling of cases; and
>
> (e)  the criminal defendant's escape is thought to represent an affront to the dignity and authority of the Court.

A.  Neither the Supreme Court nor the Fifth Circuit have given the Court guidance

as to the relative weight of these five criteria. Nonetheless, as to criteria number one, Bagwell had already been recaptured when the Court considered the issue of the dismissal *vel non* of his Petition. Accordingly, the Court at that time could have enforced any judgment it rendered, either to allow the defendant to remain incarcerated or grant his writ. In either matter, nothing under this factor supports the District Court's dismissal.

        B.        The waiver or abandonment theory, restated "leave it and lose it," while being quite appealing to the general populace, seems now to have little judicial support, except perhaps in the direct appeal circumstance. Here, all direct appeals had already been exhausted and State habeas relief denied. Petitioner's sole remaining avenue for Constitutional challenge remained but the "Great Writ." Bagwell's temporary absence from custody (i.e., his escape) had no causal nexus to the merits or presentation of the merits of his grounds for relief any more than a lawyer's vacation trip during the pendency of a civil case.

        C.        With regard to impeding the ability of the Court to adjudicate the proceedings before it, there is no evidence that Bagwell's escape impeded the Court or affected the Court's efficient handling of cases before it or of Bagwell's habeas petition.

        D.        With regard to the deterrent effect that the doctrine may have, I conclude that the allure of the sweet smell of freedom is greater than the repugnant stench of dismissal. The doctrine has no individual deterrent effect under the circumstances of this case. I conclude that there is no probative causal connection between a potential escapee's motivation to escape and the potential that by escaping he may lose an avenue of appeal. Certainly there is no such proof that Bagwell in this case, or any defendant in any case, knew or appreciated the meaning or application of the fugitive disentitlement doctrine and the impact it might have upon his willingness to escape.

I conclude that the deterrent effect is the figment of judicial imagination.

        E.      This then leaves the final consideration - the "affront to the dignity and authority of the Court." Clearly, every escape of a convicted felon is an affront to the dignity of the court that tried him; the court that considered his appeal; the court that considered his state court habeas corpus proceeding, if any; to the federal court having before it any application for relief; and, indeed, the entire judicial systems of the state and federal governments. However, those great judicial institutions, charged by our Constitutions to fairly and evenly administer justice tempered with mercy, the very pillars of our commitment to the rule of law and not of men, surely shall prevail in the fact of the affronts that cretins like Bagwell may make.

        F.      While the state and federal law enforcement agencies may have been "prejudiced" by having to spend time, effort, resources and money to apprehend Bagwell and his cohorts, the direct and appropriate remedy to that prejudice would have been prosecution for escape and/or forfeiture of fruits or instrumentalities of the escape, not a post-recapture dismissal of a pending habeas petition. The "prejudice" that might support the application of the fugitive disentitlement doctrine contemplates some dilatory impact upon the adjudicative function of the Court. I find no such prejudice demonstrated by the clear facts in this case.

Finally, based upon the foregoing, I recommend that the District Court overrule the Respondent's Motion to Dismiss and that the Court promptly take under consideration the merits *vel non* of Petitioner Bagwell's Petition for Writ of Habeas Corpus.

**IT IS SO ORDERED**, this 14th day of April, 2006.

                                      /s/ Robert K. Roach
                                  **ROBERT K. ROACH**
                                  **UNITED STATES MAGISTRATE JUDGEn**